# H. C. ANSON AND CALVIN MOORE

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa October 26, 1893.*

1. CRIMINAL LAW — FORGERY — *aiding and abetting — without taking part in passing forged paper.* It is not necessary to charge a person with the forgery of notes, and a mortgage to secure the same, that he should have actually participated in uttering and passing the same. It is sufficient if he forged the papers, or aided or assisted in their forgery, with the intent that they should be uttered as true and genuine.

2. SAME — *presumption as to intent to defraud.* From the intent to pass a forged promissory note as good and genuine, the law will infer an intent to defraud the person upon whom the forged note is actually passed, as well as to defraud the person whose name is forged.

3. The indictment for a forgery may lay the intent to defraud either the person whose name is forged or the person to whom the forged instrument has been passed, and proof of an actual intent to pass it as good, though there be shown no actual intent to defraud the particular person, will sustain the allegation.

4. On an indictment for the forgery of a note by two persons, and passing the same as genuine, evidence of the prior hypothecation of the same as collateral to the note of the two defendants is competent to go to the jury as against the defendant not otherwise uttering the same, as tending to prove the forgery was committed by him and his co-defendant with the intent to pass the note as genuine upon whoever would take it.

5. The intention to defraud by means of a false and fictitious instrument is essential to the crime of forgery. There must be in the individual committing the act, what is termed in law an intent to defraud a particular person, but the law presumes such intent as to the particular person if it be shown that the intent was that the instrument forged should be used as true and genuine.

6. SAME — *evidence to show intent.* On a prosecution for forgery, any evidence having a tendency to prove the intent with which the particular act charged was committed is competent. And so where the guilt of the defendant depends upon the intent or design with which the act is committed, or upon his guilty knowledge, it is permissible to examine into any matter with which he is connected which tends to establish the crime charged, showing a guilty intent, design or knowledge.

7. This has been said to form an exception to the general rule, but evidence being admissible if it tends to prove the issue or constitutes a link in the chain of proof, although, of itself, it might not justify a verdict, it falls strictly within the rule that the evidence offered must correspond with the allegation and be confined to the point in issue.

8. Same—*evidence of other offenses of same kind.* In prosecutions for forgery, and for uttering forged paper as genuine, evidence is admissible to show that the defendant had, about the same time, in his possession, or uttered or attempted to utter, other forged instruments of the same description, as tending to prove guilty intent and knowledge in the making or uttering of the particular instrument charged to have been forged or uttered.

9. The conditions to the introduction of such evidence are, that where such instruments are offered in proof of guilty knowledge there must be strict proof that they are forgeries; and the forgery, possession or uttering must, in point of time or circumstances, be so near the commission of the alleged offense that the inference arises that the defendant must have intended, by the principal forgery, to perpetrate a fraud, or must have known that the instrument uttered was spurious.

10. The evidence of other forgeries or uttering of forged instruments is not admissible, and can not be considered for the purpose of establishing the act of forging or uttering the instrument charged in the indictment as being forged or uttered. But the fact of the false making or the uttering of an instrument shown to have been forged having been shown, evidence of collateral forgeries and uttering of forged instruments of like description is admissible, as tending to show the intent with which the false making was done, or the guilty knowledge of the defendant in uttering the instruments named in the indictment.

11. Same—*evidence of other forgeries—when error.* On the trial of several for the forgery of a note and deed of trust, and for uttering the same as genuine, it is error to admit in evidence, for the People, the declarations of two of the defendants in respect of forgeries and forged instruments, when they are not produced to the jury and shown to be forgeries in fact.

12. Evidence of the admissions or statements of one being tried for forgery, in reference to the note described in the indictment as having been forged, is admissible against him, but what he has said about another note not in evidence is not admissible to prove the charge on which he is being tried.

13. Same—*proof of forgery—testimony of person whose name is forged.* The person whose signature is alleged to be forged, while a competent is not an indispensable witness to establish the forging.

14. Instructions—*not affecting party complaining.* Where several defendants are tried together for forgery, and all are convicted, and

two of them sue out a writ of error, they can not complain of the refusal of instructions relating alone to the connection of a defendant not joining in the writ of error.

15. Same—*repeating.* Where every principle of law in instructions refused, applicable to the case and proper to be given, is fully covered · by those given, there will be no error in the refusal.

Writ of Error to the Criminal Court of Cook county; the Hon. Jonas Hutchinson, Judge, presiding.

Mr. Charles Hughes, for the plaintiff in error Anson:

Evidence competent as to part of the defendants should be received and admitted as to them, and the jury directed not to apply it to the others. Where testimony is offered which is competent to only part of the defendants, the same should be limited and restricted as to them by instructions from the court, and the jury should be directed to disregard all irrelevant and incompetent testimony. 1 Bishop on Crim. Proc. secs. 1034, 1053, 966, 978; 2 Thompson on Trials, secs. 2354, 2415; *People* v. *Mannsan,* 60 Mich. 15.

The judge, and not the jury, must determine the competency of the testimony offered, and if it be incompetent, reject it. It is the province of the jury to weigh the evidence, and not to determine its competency. Thompson on Trials, sec. 318; 1 Greenleaf on Evidence, sec. 49.

The judge determines whether any declarations or statements of the accused are competent and admissible to some and not to others, and not the jury. 1 Thompson on Trials, sec. 338; *Scott* v. *Coxe,* 20 Ala. 294; *Carter* v. *Barrett,* 6 Fla. 283; *Garten* v. *Hadsell,* 9 Cush. 508.

The general rule is, that evidence tending to prove other independent and distinct offenses than that alleged in the indictment is incompetent, and if admitted will reverse. *Barton* v. *People,* 135 Ill. 405; *Farris* v. *People,* 129 id. 521; *Baker* v. *People,* 105 id. 452; 1 Bishop on Crim. Proc. sec. 1120; 1 Thompson on Trials, sec. 330; Wharton on Crim. Evidence, (8th ed.) sec. 30.

That evidence that the defendant, about the same time and under similar circumstances, passed other forged documents is admissible to prove guilty intention, is not doubted. *Fox* v. *People,* 95 Ill. 71; *Steele* v. *People,* 45 id. 152; Wharton on Crim. Evidence, sec. 34.

Where such other instruments said to be forged or uttered or passed are offered in evidence to prove guilty intention, there must be strict proof that they are forgeries, and the collateral or extraneous crime (forgery) can not be put in evidence without proof that the defendant was connected with its commission. 3 Greenleaf on Evidence, (Redf. ed.) sec. 111; Wharton on Crim. Evidence, (8th ed.) sec. 48.

Evidence of mere statements, declarations, conversations, admissions or confessions, alone, as to the collateral forgery or uttering, are not admissible to prove guilty intention. Such statements, conversations, etc., are admissible only where they relate to the forgery or uttering charged in the indictment. 3 Greenleaf on Evidence, sec. 111; *Fox* v. *People,* 95 Ill. 71; *People* v. *Corbin,* 56 N. Y. 363; *State* v. *Breckenridge,* 67 Iowa, 204; Wharton on Crim. Evidence, sec. 34; Moore on Crim. Law, sec. 569.

Incompetent evidence admitted to the prejudice of the rights of the accused will be error, and will reverse even in cases of guilt, on the measure of punishment. *Farris* v. *People,* 129 Ill. 521; *Bartholomew* v. *People,* 104 id. 601; *Kirby* v. *People,* 123 id. 437.

Mr. C. W. DWIGHT, and Mr. HAMPDEN KELSEY, for the plaintiff in error Moore.

Mr. GEORGE HUNT, Attorney General, for the People.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Plaintiffs in error were jointly indicted with Henry C. Evans, F. Arthur Langlois and William H. Henderson, for forgery, and for passing and uttering as true and genuine the paper

thus charged to have been forged. Henderson, Anson and Moore were convicted, and sentenced to eight years, severally, in the penitentiary. Anson and Moore, severally, prosecute a writ of error.

The indictment contains three counts, the first charging the defendants with falsely and feloniously forging a note for the sum of $6000, dated October 5, 1891, purporting to be made by Lyman A. Strong, Samuel B. Leiter and Lucinda J. Ingersoll, payable to the order of Henry C. Evans, one year after date, with interest at seven per cent, as per coupons attached, principal and interest payable at the First National Bank of Chicago, Illinois, and also charging the felonious making and forging of said coupon notes, and a certain trust deed purporting to be executed on the same day by the same parties, joined with Fannie M. Strong and Fannie W. Leiter, wives, respectively, of said Strong and Leiter, conveying certain lots, known as the Park Manor subdivision, etc., in the city of Chicago, to the said Henry C. Evans, to secure the payment of said $6000 note and coupons. The second and third counts charge the defendants with uttering and passing the same notes and trust deed, knowing the same to be forged, with intent to defraud Whiting G. Press.

That said note, coupons and trust deed were forged, is clearly established and is not controverted. That Henry C. Evans, who purported to be the payee in said notes and grantee in said deed of trust, hypothecated the same as collateral to his note payable to Whiting G. Press & Co., dated October 30, 1891, and obtained from Whiting G. Press $3000 in money upon the faith of such collateral, was clearly proved and is likewise uncontroverted. The controversy arising in this case is as to the complicity of plaintiffs in error in the forging, or in the uttering and passing, of the forged instruments in writing.

Plaintiffs in error having presented separate briefs, and the facts relied upon as connecting them with the commission of

the crime being in the main disconnected, their cases must be considered separately.

First, as to the defendant Moore, it is insisted that the evidence is insufficient to warrant a conviction. Moore was a contractor, engaged in various building enterprises, and becoming acquainted with Evans, who, as this defendant says, represented himself as having means, proposed furnishing money to be used by Moore and himself in business enterprises, etc., and exhibited the notes and mortgage before mentioned. It appears, and is not controverted, that Moore and Evans executed to one Camp their promissory note (to whom Moore introduced Evans as a man of means) on short time, for $600, and Evans put up, as collateral thereto, the forged notes and trust deed, and the money was paid to them by Camp. Shortly afterward Evans was introduced to Press by the defendant Henderson, a broker, and negotiations entered upon to procure a loan on Evans' note, at ninety days, from Press, upon the same collateral, and with the result before mentioned.

The forged trust deed purported to be acknowledged in the county of Richland and State of Ohio, by and before Howard B. Dirlam, a notary public, and the certificate of acknowledgment was attested by the name of said Dirlam, as notary public, with his notarial seal. That the deed of trust was not acknowledged by the grantors before said Dirlam at the time and place named in the certificate, or at any other time and place, was clearly proved. Between the 27th day of September and the 5th day of October, 1891, the defendant Moore brought to the office in Chicago where the witness Arnold was employed, a notarial seal, and left it in the care of the witness Arnold. While it remained in his care, in his desk, the witness took several impressions of the seal. Subsequently, Moore and Evans discovering the impressions, both being present, tore them out of the book in which they had been made, except one, which they apparently did not discover.

This impression was produced at the trial, and purported to be the notarial seal of Howard B. Dirlam, of Richland county, Ohio, and the *fac simile* of the notarial seal attached to the certificate of acknowledgment of the alleged forged trust deed. It will be observed the trust deed bears date October 5, 1891, and purports to have been acknowledged in Richland county, Ohio, on the 10th day of that month. It is shown, also, that said Evans and plaintiff in error Moore, in September or October, 1891, visited the office of the witness Dudenhofer together. Evans had been doing some writing in the office on a legal blank. On the next day Evans and Moore returned. In the meantime the witness had changed ink, a little different in color from that previously used. Evans noticing the difference, asked the witness if he had not a fountain pen that had some of the old ink in it. The witness procured him the pen with the old ink, etc.

The People, for the purpose of showing the guilty knowledge of the defendants, offered in evidence a note dated Franklin, New Hampshire, August 12, 1891, signed "Edward H. Sturtevant," payable three years after date, to the order of Theodore Willmott, at the First National Bank, Chicago, Ill., with six per cent interest per annum, for $5000, and a mortgage describing said note and to secure the same, dated on the same day, on certain lots in the city of Chicago, and purporting to be executed by Edward H. Sturtevant and Amelia Sturtevant, his wife, and acknowledged in the county of Merrimac and State of New Hampshire, before William H. Brown, a notary public in and for said county, on said 12th day of August, 1891, the certificate of acknowledgment being signed "William H. Brown, Notary," and attested by his notarial seal. It is shown that Edward H. Sturtevant had, shortly before these transactions, purchased the lots described in said mortgage; that Moore knew of the residence of Edward H. Sturtevant and of his purchase of said property, and claimed a commission for having brought about the sale of the property to

Sturtevant through a brother of Sturtevant residing in Chicago. It appears that the signature of Edward H. Sturtevant to the mortgage and note is not his genuine signature. The name of the wife of Edward H. Sturtevant, the owner of the property, and who resides in New Hampshire, is not Amelia, but Ada.

On the third of February, at the time of Moore's arrest, he communicated to the officers that he could find a notarial seal,—that he had seen one Johnson throw one away,—and proceeded with the officers to the corner of Sixty-ninth street and Michigan avenue, in Chicago, and pointed out a pool of water, where he said a seal was thrown. The officers found the seal and produced it in court, and the impression is a *fac simile* of the seal to the certificate of acknowledgment of the Sturtevant mortgage. It is shown that he told the officers that Johnson got the seals made in a basement at 92 Dearborn street, Chicago; that Johnson ordered them, and he, Moore, furnished the money to pay for them. When the seal was found, the officer observing that it was the notarial seal of William H. Brown, said to the defendant Moore that it was not the seal they were looking for, and asked him where the other seal was. Moore replied that the officer would have to see Anson,—that he had left the other seal with a man named Anson, and that it was so mutilated that it would be of no use. Moore lived about a block from where the seal was found. Moore admits telling the witnesses Elliott and Broderick that he saw Johnson throw a seal away. He says that as he was going to his work, "I saw him throw something in the sewer; I looked afterwards, and made up my mind that it must have been the seal, and from that I said what I did to the detectives." The evidence tends to show that the man, Johnson, spoken of, was also called Willmott.

There is much more in the record tending directly to connect the defendant Moore with the forgery, and the uttering and passing of forged instruments; but without going into it,

enough has been shown to clearly warrant the jury in finding that he not only had guilty knowledge of the crime, but also actually participated in it.

It is, however, urged, that there is no evidence tending to show that Moore participated in the intention to defraud the particular person named in the indictment. He was not present, nor does he seem to have taken any part, in the negotiation resulting in passing the forged paper upon Whiting G. Press. The defendants shown to be present were Evans, Henderson and Anson. Independently of whether Moore conspired with these defendants to utter and pass the forgeries, it is not necessary, to charge him with the forgery of the instruments, that he should have actually participated in uttering and passing the same. It is sufficient if he forged the paper, or aided or assisted in its forgery, with the intent that it should be uttered as true and genuine. (Roscoe on Crim. Evidence, *566; Wharton on Crim. Law, secs. 1452-1456; 2 Bishop on Crim. Law, sec. 598.) From the intent to pass as good and genuine, the law infers an intent to defraud the person upon whom the forged instrument is actually passed, as well as to defraud the person whose name is forged. Thus it is said by Bishop, *supra:* "Generally there are two persons who, legally, may be defrauded : the one whose name is forged, and the one to whom the forged instrument is to be passed; and so the indictment may lay the intent to defraud either of these, and proof of an actual intent to pass as good, though there be shown no actual intent to defraud the particular person, will sustain the allegation." Wharton on Crim. Law, sec. 1453 b; 8 Am. and Eng. Ency. of Law, 509, note 1.

It is next insisted that the court erred in admitting evidence of the hypothecation of the forged instruments with the witness Camp, as collateral to the note of Evans and Moore to Camp. The evidence was clearly competent as against the defendant Moore, as tending to show the intent to utter the forged paper as true and genuine ; and although he could not

be convicted, under this indictment, for the uttering to Camp, or of the forgery with the intent to defraud Camp, yet he having, in connection with Evans, used the forged paper as collateral to their joint note, it was competent to go to the jury, as tending to prove the forgery was committed with the intention to pass the forged paper as good and genuine upon whoever would take it.

It was also objected, that the court erred in admitting evidence tending to show that other forged instruments were in possession of the defendants. The intention to defraud by means of the false and fictitious instrument is essential to the commission of the crime of forgery. It is said there must be in the mind of the individual committing the act, what is termed in the language of the law an intent to defraud a particular person. But, as we have seen, the law presumes this intent as to the particular person, if it be shown that the intent was that the instrument forged should be used as true and genuine. (2 Wharton on Crim. Law, sec. 1455, and cases cited; Bishop on Crim. Law, *supra*.) Any evidence, therefore, having a necessary tendency to prove the intent with which the particular act charged was committed, would be competent. And so where the guilt of the party depends upon the intent or design with which the act is committed, or upon his guilty knowledge, it is permissible to examine into any matter with which he is connected which tends to establish, in the case charged, a guilty intent, design or knowledge. This has sometimes been said to form an exception to the general rule, but evidence being admissible if it tends to prove the issue or constitutes a link in the chain of proof, although, of itself, it might not justify a verdict, it falls strictly within the rule that the evidence offered must correspond with the allegation, and be confined to the point in issue. 1 Greenleaf on Evidence, secs. 51-53.

In prosecutions for forgery, and for uttering forged paper as true and genuine, it is well established that evidence is

admissible that the defendant had, about the same time, in his possession, or uttered or attempted to utter, other forged instruments of the same description, as tending to prove guilty intent and knowledge in the making or uttering of the particular instrument charged to have been forged or uttered. (Roscoe on Crim. Evidence, *93; 3 Greenleaf on Evidence, sec. 111; 2 Wharton on Crim. Law, 1457 b; *United States* v. *Mitchell et al.* Baldw. 366; *Bottomley* v. *United States*, 1 Story, 135; *Francis* v. *State*, 7 Texas App. 501; *Fox* v. *The People*, 95 Ill, 71.) The conditions to the introduction of such evidence are, that where such instruments are offered in proof of guilty knowledge, there must be strict proof that they are forgeries, and the forgery, possession or uttering must, in point of time or circumstances, be so near the commission of the alleged offense that the inference arises that the defendant must have intended, by the principal forgery, to perpetrate a fraud, or knew that the instrument uttered was spurious. (3 Greenleaf on Evidence, 111, and cases cited; Roscoe on Crim. Evidence, *95; *Rex* v. *Millard*, Russ. & Ry. 245.) The evidence of other forgeries or uttering of forged instruments is not admissible, and can not be considered for the purpose of establishing the act of forging or uttering the instrument charged in the indictment to have been forged or uttered; but the fact of the false making or the uttering of an instrument shown to have been forged having been shown, evidence of collateral forgeries, and uttering of forged instruments, of like description, is admissible, as tending to show the intent with which the false making was done, or the guilty knowledge of the defendant in uttering the instrument named in the indictment.

We are of the opinion that the court did not err in admitting the evidence tending to show that the Sturtevant note and mortgage were forged by and in the possession of the defendant Moore and his co-defendants. By reference to the evidence before collated, which is by no means complete, the forgery of the Sturtevant note and mortgage was shown. It seems clear

that a conviction of the defendant, upon proper indictment for forging the same, must have been sustained, and there was, therefore, such clear proof of the forgery as would justify the court in admitting it as evidence. The person whose signature is alleged to be forged, while a competent is not an indispensable witness to establish the forgery. (3 Greenleaf on Evidence, sec. 106.) The defendant Moore knew that Sturtevant owned the Washington boulevard property and that he resided in New Hampshire, and there is no uncertainty about the person whose name was intended to be, and was, in fact, forged. In such case, there being no suggestion that there was another person of the same name, or that the instrument was that of another person, proof of the forgery of Sturtevant's name was sufficient, in the first instance, to warrant a conviction, and cast the burden of explanation upon the defendant.

The effect of this evidence was properly limited by the seventh instruction given on behalf of the People. By it the jury were told that the evidence was not admitted, nor could it be used, as evidence to show that the defendants, or either of them, had committed other offenses or were guilty of forgery, in order to lead to the inference that they, or either of them, would be more likely to commit the offense charged in the indictment, but was admitted solely "on the ground that it might tend to show" that they, or some of them, had guilty knowledge of the fraudulent character or forgery of the notes and trust deed named in the indictment, if they were forged or fraudulent, and before the jury would be authorized to make that use of such evidence, they must be satisfied, from the evidence, not only that such other notes and mortgages were false and forged, but that the defendant or the defendants used them knowing them to be false and forged, and the evidence could only be used for that purpose against the defendants they believed, from the evidence, to have been guilty of forgery, or passing such instruments knowing them to be forgeries.

There was admitted, over the objection of the defendants, the declarations of Anson and Moore in respect of forgeries and forged instruments which were not produced to the jury or shown to be forgeries in fact, and this ruling is assigned as error. That this was error is not seriously questioned. We held in *Fox* v. *The People, supra,* that statements of the defendant as to other instruments of the same kind, supposed to have been uttered by him, are not admissible in evidence; that "evidence of admissions or statements in reference to the note for the forgery of which he is being prosecuted was admissible, but what he said of another note was not admissible to prove the charge on which he was being tried;" and it was held that proof of the existence and a production of the collateral instrument alleged to be forged was required, and this position seems to be sustained by authority. *Rex* v. *Cooke,* 8 C. & P. 582; *Rex* v. *Millard,* Russ. & Ry. 245; Roscoe on Crim. Evidence, *95; 3 Greenleaf on Evidence, 107-111; *State* v. *Breckenridge,* 67 Iowa, 205.

We are of opinion, however, that the admission of such evidence can not, as against the defendant Moore, be regarded as prejudicial error. The statements in respect of offenses committed or contemplated, as we understand the record, related to the instrument produced and proved in the principal case, except in only two or three instances. His declarations in reference to the notarial seal, the impression of which was attached to the Sturtevant mortgage, being of a physical fact, tending directly to show his knowledge of if not complicity in that forgery, were clearly competent as against him. And the same is true of his declaration showing his knowledge of the ownership of the Sturtevant property and of the residence of Sturtevant. Proof that he offered to the witness Newcomb what was said to be a forged "tax bill," and what was said in reference thereto, were clearly inadmissible under the rule before announced, but in view of the proof we do not regard it as prejudicial error as to Moore. It does not appear, from

the evidence, that Moore took any part in or was present at the conversation testified to in respect of said "tax bill" until about the close of the conversation, and the witness does not recollect what he said, but that he introduced another party to Anson and the witness to whom the "tax bill" was given. He then says that the talk was between Moore and Anson, and that an arrangement was made by which the witness was to meet Anson at the office of the Pacific Portrait Company, 111 Randolph street, and that they told the witness the property in respect of which he was to trade, and the person to whom he was to trade it. The property was the Washington boulevard property, and witness was asked to represent himself as Sturtevant, the owner of the property, and that he was subsequently introduced to the man with whom he was to trade, under the assumed name of "Brown," and that subsesequently, the witness declining, Moore importuned him to go on and close the deal. It is apparent from the record that all this related, not to the alleged forged "tax bill," but to the Sturtevant property. In view of the facts proved in respect of that property and Moore's connection with it, it is not perceived how this evidence could have affected Moore prejudicially. It is true the jury may have gotten the impression that Moore had knowledge of the so called "tax bill;" but he is not shown to have had it in his possession, to have been connected with its forgery, or that it was uttered or attempted to be uttered.

It is also objected that the court erred in refusing the defendants' 4th, 5th, 7th, 8th, 9th, 11th, 12th, 14th, 16th, 20th, 22d, 31st, 35th and 40th instructions. It is sufficient to say that the 33d and subsequent instructions asked related wholly to the connection of the defendant Henderson with the commission of the offense, and in nowise related to the other defendants. In respect of the other instructions complained of, it is said by counsel, simply, that "the court should have given" them. No error is pointed out or designated as prejudicial to

this defendant in their refusal. We have, however, examined the series of instructions asked, and find that every principle of law announced in those refused, applicable to the case and proper to be given, was fully covered in the instructions given. It has been so repeatedly held that the court is not bound to repeat instructions to the jury, the citation of authority is unnecessary.

We are of opinion that the conviction of the defendant Moore was right, and no prejudicial error having intervened, the judgment as to him will be affirmed.

We are of opinion, however, that the evidence of the witness Newcomb, and other evidence of like character found in the record, was prejudicial error as to the defendant Anson. As he must again be put upon trial it will not be proper to enter upon a discussion of the evidence or probative force of the facts and circumstances proved, and tending to connect him with the commission of the offense charged. It is sufficient to say, that the evidence is, in some respects, conflicting, and while we express no opinion for the reason already stated, it must also be said that it is wanting in many of the convincing characteristics of the evidence against defendant Moore and others. Without entering into detail, it may be said the evidence of the witness Newcomb, already mentioned, and of others as to the alleged declaration and acts of the defendant Anson, not connected with the commission of the principal offense, falls directly within the condemnation of *Fox* v. *The People, supra,* and for the reason there given should have been excluded. That it was highly damaging and prejudicial to this defendant in the state of case made against him can not be questioned, and the court erred in its admission. By the 26th instruction asked on behalf of defendant Anson, the court was asked to exclude this evidence from the jury so far as it affected the defendant Anson, but the court declined to give the same. This, we think, was error. It will not be necessary to enter into a discussion or analysis of this evidence for the

purpose of showing in what manner it tended to the prejudice of Anson. It is sufficient that after the most careful consideration we can not say that it was not prejudicial to permit the evidence to go to the jury.

Many other errors are assigned which we do not deem it necessary to consider at this time.

For the reasons given, the judgment as to the defendant Moore will be affirmed, and as to the defendant Anson will be reversed, and the cause remanded as to him for re-trial.

: *Judgment affirmed as to Moore, and as to Anson reversed.*