(No. 14612.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN M. ERNST, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*employment of counsel to assist prosecution rests in discretion of court.* Employment of counsel to assist the State's attorney in a criminal case is a matter resting largely in the discretion of the trial court.

2. SAME—*court has no authority to abrogate statute because of changed conditions.* Courts have no authority to abrogate a statute because since its enactment new rights and relations have been created and by reason of the changed conditions and relations the statute has outlived its usefulness or the reasons which existed at the time of its adoption.

3. SAME—*where husband is charged with forging wife's name neither can testify as to his authority.* Under paragraph 428 of the Criminal Code, where a husband is charged with forging his wife's name to a note neither of them can testify as to whether or not he had authority to sign her name, and where the court has admitted statements of the wife to the effect that when shown the note by the bank auditor she said the signature was not hers and that she had not authorized it, the error cannot be corrected by striking out the evidence.

4. SAME—*when party charged with forgery cannot testify as to his intention.* Falsely signing another's name to an instrument without any intent to defraud or deceive anyone does not constitute the crime of forgery, but where a party charged with forgery admits that he signed another's name to a note for the purpose of inducing a bank to accept it, and it is accepted by the bank as a genuine signature, he cannot be permitted to testify as to what his intention was.

5. SAME—*when other forged paper is admissible in evidence to prove forgery.* In a prosecution for forgery of a certain paper, other forged paper, to be admissible in evidence as proof of guilty knowledge, must be shown by strict proof to have been forged, and the possession or uttering of the spurious paper by the defendant must be shown to be so near the commission of the alleged offense in point of time or circumstances as to raise an inference that the defendant must have intended to perpetrate a fraud by the particular forgery charged.

6. SAME—*when former note alleged to have been forged is not admissible to prove forgery.* Where a husband is charged with

having forged his wife's name to a note, a former note executed six months before, and of which the later note is a renewal, is not admissible in evidence as proof of guilty knowledge, where the former note is not proved to have been a forgery although there is evidence that it was not in the handwriting of the wife.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. GEORGE A. SENTEL, Judge, presiding.

VAUSE & KIGER, (THOMAS L. MARSHALL, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT F. COTTON, State's Attorney, and JAMES B. SEARCY, (EDWARD C. CRAIG, and FRED H. KELLY, of counsel,) for the People.

Per CURIAM: Plaintiff in error gave a note to the Arcola State Bank for $5400 and signed his name and that of Margaret L. Ernst, his wife, thereto. He was indicted in the circuit court of Douglas county on the charge of forgery. The indictment charged that he forged the note with intent to defraud Margaret L. Ernst. The second count charged that he passed the forged note with intent to defraud her. He was found guilty by a jury and brings the cause here for review.

It appears that plaintiff in error and his son were in the grain and feed business in the city of Arcola. They were customers of the Arcola State Bank and their account became involved. To take up certain over-drafts they gave notes of $6000 each, purporting to be signed by their wives, due in six months. As the note given by plaintiff in error became due he went to the bank and told the cashier, John Quirk, according to the testimony of Quirk, that he could not pay this note and requested a renewal. Quirk testified that he made out a new note and gave it to plaintiff in error and told him to have it signed by his wife and return it to the bank, and that he later came in with the note with his wife's name signed to it. Plaintiff in error testified that

he signed his wife's name to the note; that he signed both his and his wife's name in the bank at the time the note was made out by Quirk and in his presence and that he did not take it away from the bank. The bank closed its doors on May 16, 1921, and the Auditor of Public Accounts took charge of it. Testimony was offered by the State to the effect that plaintiff in error's wife came to the bank after the Auditor had taken charge and was shown the note in question and asked whether or not the signature was hers, and that she said it was not and that she had not authorized her husband to sign it. Defendant objected to this testimony and the objection was overruled, but later, during the presentation of the State's case, the court struck out this evidence. Plaintiff in error sought to testify that he had authority from his wife to sign her name to this note, but the court refused to permit him to do so. The State also offered plaintiff in error's wife as a witness, but the court ruled that she was incompetent and that a statement made by her could not be used against him.

Plaintiff in error complains of the ruling of the court in denying his motion to exclude from the case counsel employed to assist the State's attorney. Employment of counsel for such purpose in a criminal case is a matter resting largely in the discretion of the trial court, and we are satisfied in this case that there was no abuse of that discretion. The issues appear to have been well presented on both sides.

Plaintiff in error admitted he signed his wife's name to the note. He offered to testify he had authority from her to sign her name to the instrument. The State denied she authorized him to sign her name and offered her as a witness to prove she did not give him any such authority. The court sustained objections to the testimony of both of them on that subject. Under the rules of the common law neither could testify to the matters sought to be proved by them, and the question is raised and presented whether the common law, which prevented a husband or wife from testify-

ing against each other except in case of a personal injury
by one against the other, should under present conditions
be relaxed and both be held competent to testify in a case
like this.   The People insist the changed conditions of so-
ciety and of the legal rights of husband and wife render
the common law rule out of harmony with the genius and
spirit of our institutions, and the reason for the rule having
ceased, the rule is no longer applicable.   Plaintiff in error
contends that by paragraph 428' of the Criminal Code the
common law rules of evidence are made binding upon all
courts and juries in criminal cases except as otherwise pro-
vided by law.

Paragraph 428 was enacted in the revision of 1845 and
was re-enacted in substantially the same language in the re-
vision of 1874, and now reads as follows:   "All trials for
criminal offenses shall be conducted according to the course
of the common law, except when this act points out a dif-
ferent mode, and the rules of evidence of the common law
shall also be binding upon all courts and juries in criminal
cases except as otherwise provided by law."

In 1819 the General Assembly passed an act adopting as
the common law of this State the common law of England
and all statutes of the British parliament (with certain ex-
ceptions named) which are of a general nature and not local
to that kingdom.   The People cite many cases of this court
and courts of other States that it was not meant by such
legislation to petrify the rules of the common law as de-
clared at any one time, in such inflexible form as to make
them the rules of decisions for all time;  that the common
law is understood as adopted only in cases where it is ap-
plicable to the conditions of our society and in harmony
with the genius, spirit and objects of our institutions;  that
courts have made many modifications of the common law
as changed conditions seemed to require in the interests of
justice;  that the reasons for many rules of the common law
which called them into existence had ceased, and the rea-

sons for the law having ceased, the law itself no longer existed. (*Stuart* v. *People*, 3 Scam. 395; *Boyer* v. *Sweet*, 3 id. 120; *McLean* v. *Griswold*, 22 Ill. 218; *Kreitz* v. *Behrensmeyer*, 149 id. 496; *Ketelson* v. *Stilz*, 184 Ind. 702; *Trustees* v. *Smith*, 188 N. Y. 74; *Kerner* v. *McDonald*, 60 Neb. 663.) But we are confronted with a legislative enactment that "the rules of evidence of the common law shall also be binding upon all courts and juries in criminal cases except as otherwise provided by law," and the legislature has not otherwise made any provisions changing the rule in cases of this character. When paragraph 428 was first enacted the reasons now existing which are urged why it should not be applied did not exist. If, since its enactment, by reason of changed conditions, it is thought to have become an unjust act and for that reason should no longer be applied, the remedy is with the legislature. We know of no authority the courts have to abrogate a statute because since its enactment new rights and relations have been created, and by reason of the changed condition and relations it is thought the statute has outlived its usefulness or the reasons which existed at the time of its adoption. It is worthy of note that after paragraph 428 was first enacted the General Assembly by legislation changed the status of married women but after those changes re-enacted the same statute. The General Assembly may have thought, notwithstanding the change in the law in relation to married women, there still remained considerations of public policy which should not relax the rule of the common law in criminal cases. If it is now thought the statute is unwise and does not rest on a sound basis of reason, we think the legislature must be appealed to, to change it. This court cannot do so.

Notwithstanding the court recognized its error in permitting proof of statements of the wife of plaintiff in error that she did not authorize him to sign her name to the note and afterwards struck it out, it was impossible to eradicate it from the minds of the jury. We think this clearly so

and was sufficient to require that a new trial be granted. The contention of the People that the wife's statements were *res gestæ* is untenable. The statements were made after the Auditor had taken charge of the bank, long after the note was signed.

To constitute the crime of forgery of an instrument it is necessary for the prosecution to prove the forgery was committed with the intent to defraud some person named. (*Fox* v. *People,* 95 Ill. 71.) It is contended by plaintiff in error that where the character of the act depends on the intent of the party it is competent to inquire of him what his intent was. This is true in certain cases,—especially in cases of personal violence of one person toward another,— but we know of no authority for holding a person charged with forgery who admits he signed another's name to a note may be asked what his intention was. It is true, the mere falsely signing another's name to an instrument without any intent to defraud or deceive anyone does not constitute the crime of forgery, but here the note alleged to be forged was accepted by the bank, the People allege and claim, as the genuine note of Mrs. Ernst. Her name was signed to the note for the purpose of inducing the bank to accept it. The only explanation plaintiff in error offered to give as to his intention was that his wife authorized him to sign her name. On that subject we have held both were incompetent to testify.

It is contended by plaintiff in error that he signed the note in the presence of the cashier, and that the bank did not rely upon the genuineness of his wife's signature but upon his assumption of authority, and that therefore there was no forgery. While he testified that the note was so signed, the cashier of the bank testified that plaintiff in error took the note away with him and it was later brought back with the signatures on it, and that he did not see anyone sign it. Even though the record shows that the cashier had, previous to his testimony, pleaded guilty to charges

of embezzlement and forgery connected with the failure of the bank, it cannot be maintained by plaintiff in error, as a proposition of law, that the truth of his own statement is established, and this court should rule, as a matter of law, that there was no forgery. It was the province of the jury to determine the credibility of the witnesses and give such weight to their testimony as it appeared to be entitled to.

Plaintiff in error also complains of the admission in evidence of another note dated August 16, 1920. The evidence for the State tends to show that the note charged as a forgery in the indictment was a renewal of the note of August 16, 1920; that the signature appearing on the note of August 16, 1920, as "Margaret Ernst" was not her signature. The People contend that as the evidence shows that the note set out in the indictment was a renewal of the note of August 16, 1920, the latter was competent as a part of the same transaction and for the purpose of showing guilty knowledge. The rule under which proof of the possession or passing of other forged paper is permitted, requires that the instrument offered in evidence, to be competent as proof of guilty knowledge, must be shown by strict proof to have been forged, and that the possession or uttering of the spurious paper be shown to be so near to the commission of the alleged offense in point of time or circumstances that the inference arises that the defendant must have intended to perpetrate a fraud by the particular forgery charged or knew that the instrument uttered was spurious. (*Anson* v. *People,* 148 Ill. 494; 3 Greenleaf on Evidence, 111.) The note on which the indictment in this case is based was executed more than six months after that of August 16, 1920. It was not near in point of time, nor is there evidence that the latter note was a forgery, other than proof that it was not in the handwriting of Margaret L. Ernst. Plaintiff in error admits signing the note set out in the indictment but did not testify concerning the signing of the

earlier note.   Applying the rule that the note offered must
be clearly proven to be itself a forgery, the degree of proof
required to meet the rule has not been made.   It was error
to admit the note of August 16, 1920, in evidence.

For the errors indicated the judgment is reversed and
the cause remanded for a new trial.

*Reversed and remanded.*