THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK PASSANTINO, Defendant-Appellant.

Second District   No. 77-449

Opinion filed January 8, 1979.—Rehearing denied February 8, 1979.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of forgery under an accountability theory in a bench trial and sentenced to not less than 3 1/3 nor more than 10 years in the penitentiary. He contends in this appeal that he was not proved guilty of forgery beyond a reasonable doubt because the evidence failed to prove that the defendant had the specific intent to facilitate the commission of the offense of forgery.

Forgery is defined by the Criminal Code of 1961, section 17—3 (Ill. Rev. Stat. 1975, ch. 38, par. 17—3), as follows:

"Forgery.) (a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such a manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property.

(c) A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated.

(d) Sentence.

Forgery is a Class 3 felony."

The defendant was acquainted with Cynthia Stroud. She came into the Union National Bank of Elgin with a check drawn on the Pioneer Trust & Savings Bank by a maker designated as "1517 L.T.D.," in the amount of $210.25. The designated payee of the check was "Cathy Miller." Cynthia Stroud told the vice-president of the bank, Harry Wahlen, that she wanted to open a savings account with the proceeds of the check. She endorsed the check "Cathy Miller" and when Wahlen asked her for identification she pointed to a telephone number on the back of the check and told Wahlen he could call that number for verification. Wahlen called the number and the defendant answered and in answer to his inquiry told Wahlen that Cathy Miller worked for him and "it would be ok to cash the check." Wahlen then called the Pioneer Trust & Savings Bank in Chicago for verification of the checking account and was told that the account was closed long before this check was written. Actually, the indicated maker of the check—1517 L.T.D.—had been liquidated as a corporation.

Cynthia Stroud had left the bank immediately upon the deception being discovered. However, she was later apprehended, tried and convicted of forgery.

The police ascertained the address of the defendant by using the telephone number on the back of the check and he was arrested and charged with forgery. Detective Copher of the Elgin Police Department testified that he went to the defendant's apartment following the discovery that the check was drawn on a closed account and asked the

defendant if he had had a call from the Union National Bank. The defendant replied that he had received such a call and that he told the person inquiring that Cathy Miller was his secretary and the check was valid. The defendant did not testify at trial.

In this appeal, the defendant contends the evidence was not sufficient to find him guilty of forgery under an accountability theory. He argues that there was no proof that the defendant knew anything more than that Cynthia wanted his help in getting a check ok'd and there was no proof that he was aware that the check was not good or that he in any way profited from the transaction. Cynthia Stroud, called as a witness for the defendant, testified that she never told the defendant anything about the details of the check, but merely asked him to tell whomever called about a check that she worked for him and that the check was ok. The defendant contends that since there was no evidence that he participated in the creation of the check, ever saw the check, or even knew where or when it was going to be presented for payment, the evidence was not sufficient to establish that he acted in concert with Cynthia to commit a forgery by use of the check in question.

While there appears to be a dearth of cases in Illinois involving forgery under an accountability theory, a conviction under such circumstances was affirmed in the early case of *Anson v. People* (1893), 148 Ill. 494, where the defendant, while he did not participate in the actual forgery of the instrument, aided and abetted in getting it accepted as genuine. The court in *Anson* said:

> "From the intent to pass as good and genuine, the law infers an intent to defraud the person upon whom the forged instrument is actually passed, as well as to defraud the person whose name is forged." 148 Ill. 494, 502.

■■ ■ In the case before us there is certainly enough circumstantial evidence to establish that the defendant's verification of the check as being good was not done innocently and accountability can be shown by circumstantial evidence. (*People v. Daniels* (1977), 51 Ill. App. 3d 545.) Here the circumstances were not consistent with the theory that the defendant was merely doing a favor for a friend and neighbor in pretending to be the employer of Cynthia and was not aware of any fraud being involved. The defendant admitted he knew Cynthia was going to present a check as a payroll check and was going to give his name as her employer to verify the genuineness of the check. He knew this was false since he knew that Cynthia had never worked for him. According to the police officer the defendant told him that he was president of 1517 L.T.D. and this would indicate he had some knowledge of the supposed drawer of the check beforehand. While Wahlen, the bank vice-president, did not recall that the defendant represented himself as being president of 1517

L.T.D., the representation that Cathy Miller (Cynthia) worked for him and that it was ok to cash the check was patently false and could not have been made innocently. The defendant knew that the person who was actually presenting the check was Cynthia Stroud yet he acknowledged her name as being Cathy Miller. He knew she had never worked for him yet he said she was his secretary. Moreover, he could hardly have supposed that the check was genuine since these misrepresentations would not have been necessary if it had been. The actual maker of the check would have verified it if it was a genuine instrument. Yet he made a statement of a nature intended to induce the bank to accept the check at its face value. These facts are not consistent with a theory of innocent involvement but clearly demonstrate an intent to aid in the passing of a fraudulent check.

■■ Moreover, the judge, as the trier of fact in a bench trial, is not compelled to believe the defense witness's testimony to the effect that the defendant was not aware of the details of the check or the fraudulent intent of the person who presented the check to the bank. It is evident the court did not take this testimony at its face value and concluded that while it might be literally true that the details of the check were not produced or perhaps even known to the defendant, he did know and participate in the intention to pass a spurious check through his own false representations.

While the defendant was not guilty of forgery directly, we believe his conduct falls within the language of section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c)), dealing with accountability:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

The defendant clearly aided and abetted Cynthia in a scheme to pass a worthless check and can be said to be accountable inasmuch as it is reasonable to assume that if he had not agreed to verify the genuineness of the check beforehand, it would not have been presented to the bank by Cynthia. His participation was an essential part of the scheme and it strains credulity to suppose that it was innocent.

A question was raised by the defendant about delivery of the instrument. While the statute defining forgery does not require delivery of the instrument to constitute the offense if the instrument was made with the intent to defraud (Ill. Rev. Stat. 1975, ch. 38, par. 17—3), we believe

even if that were an essential element to the commission of the offense of forgery it was satisfied here. Cynthia went to the bank vice-president with the check in her hand, and gave it to him to open a savings account and left the check with him when she hurriedly departed the bank after the check's worthlessness was discovered. This, we think, was sufficient to constitute delivery of the forged instrument even though the vice-president did not forthwith accept it as genuine.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.