THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE PEEBLES, Defendant-Appellant.

First District (2nd Division)   No. 81—1247

Opinion filed May 10, 1983.

Frederick F. Cohn and Rodolfo Garcia, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Edward Barron, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

A jury convicted defendant of theft (Ill. Rev. Stat. 1979, ch. 38, pars. 16—1(a)(1), (b) (1)), and conspiracy to commit theft (Ill. Rev. Stat. 1979, ch. 38, par. 8—2), from which he appeals. He had been charged with obtaining $4,064.50 from State of Illinois warrants

(checks) by filing fraudulent "circuit breaker" tax rebate applications, issued pursuant to the Senior Citizens and Disabled Persons Property Tax Relief Act. Ill. Rev. Stat. 1979, ch. 67½, pars. 401 through 412.

The principal issues presented for review are whether: (1) other warrants from which defendant received proceeds, but which were themselves time-barred from prosecution, were properly admitted in evidence; and (2) the jury was properly instructed as to codefendant's guilty plea testimony.

Defendant and Eva Brown[1] were charged on May 5, 1980, in a 61-count indictment with having fraudulently obtained 50 State circuit breaker property tax rebate warrants between September 29, 1976, and June 30, 1977, totaling $10,793.43. The circuit court concluded that the 29 applications for tax relief allegedly filed by defendant constituted 29 separate transactions rather than one continuous transaction as the State contended. The State amended to reflect only those warrants cashed within the statute of limitations, namely, from June 14, 1977, to June 30, 1977 (surviving counts). The circuit court allowed the State to introduce in evidence the earlier time-barred warrants for the limited purpose of showing common scheme, design, intent, or other similar motives, "or any of the other reasons set forth in the cases."

The State called 21 witnesses; the defense called none. The State's evidence essentially showed the following: to qualify for circuit breaker tax relief, one must be 65 years old, or disabled and over 16 years of age; be a resident of Illinois both at the time of application and for the time period for which one seeks that assistance; have paid rent or property taxes during that period; and have an annual income of less than $10,000. The application forms required one's name, address, social security number, date of birth, income, and amount of his property taxes or, if he were renting, the name and address of his landlord, the period of time he had been renting from him, and the amount he was paying. The original 50 circuit breaker applications which defendant had allegedly prepared with the foregoing information, and the warrants that were issued pursuant to them, were received in evidence.

Applications relating to the surviving counts were labeled exhibits 2A1 through 2A18 and those relating to the stricken counts were marked exhibits 3A1 through 3A32. Before the latter were introduced, the circuit court informed the jury that no charges had been

---

[1]Prior to trial, Brown pleaded guilty under an arrangement in which she agreed to testify against defendant in return for the State's recommendation of probation.

brought against defendant in connection with them and admonished the jury that they could be considered only for the limited purpose of showing defendant's knowledge, intent, motive, absence of mistake, or common design. Certain warrants marked exhibits 4B1 through 4B18 were issued pursuant to those applications previously marked 2A1 through 2A18, relating to surviving counts; warrants marked exhibits 5B1 through 5B32 related to stricken applications marked exhibits 3A1 through 3A32. Before admitting the latter series of cancelled warrants into evidence, the circuit court again admonished the jury as to the limited purpose for which they were being admitted. Each warrant bore the applicant's name, address, social security number and a specific dollar amount, and had been returned cancelled, the amounts specified having been debited from the State's accounts. Almost none of the names and social security numbers entered on the earlier series of applications matched; some of the social security numbers had not yet been issued by the Federal government.

Brown and her fiance, Johnny Isabel, had opened a joint checking and a joint savings account on June 12, 1976, at La Grange State Bank. Exhibit 15 was a deposit ticket copy processed June 29, 1977, showing a net deposit of $2,400 into Brown and Isabel's checking account that day. Warrants 4B1 through 4B11 bore the bank's stamp indicating payment of the funds involved. All these warrants were processed at the same time and constituted the exhibit 15 deposit. Exhibit 16 was a deposit ticket copy processed July 12, 1977, in the amount of $1,050.63, credited to Brown and Isabel's savings account when exhibits 4B12, 4B13 and 4B14 were presented for payment that day and matched the amounts stated on those warrants. A series of other deposit slip copies marked exhibits 18 through 27 were matched with a number of warrants that had been presented for payment and credited to one or the other of Brown and Isabel's joint accounts, with the jury first having been admonished by the circuit court as to the limited evidentiary purpose involved.

Exhibit 36 was a business checking account signature card which defendant had signed at Union National Bank on behalf of Geno's Tax and Information Center (Geno's). Exhibit 37 was a similar card which defendant had signed at the same bank on behalf of Community Service and Information Bureau (Community). Exhibit 17 was a copy of a check for $1,200 drawn by Brown on the La Grange State Bank made payable to Ernest Parker which bore his endorsement and Community's limited, "for deposit only" endorsement. The check was paid and credited to Community's account. Exhibit 33 was a copy of a check for $100 drawn upon La Grange State Bank, signed by Brown

and made payable to Community which was endorsed by Geno's "for deposit only" and credited to the same account. Exhibit 34 was a copy of a check for $800 drawn upon La Grange State Bank, signed by Brown, payable to Community, endorsed by it, and credited to its account.

Witnesses testified with respect to unauthorized use of their names on rebate applications, improper addresses, losses of their wallets, unauthorized endorsements on tax rebate warrants, and in one case, the death of an applicant six years before the application was filed. One witness stated that defendant had come to her house four or five times. Defendant had called her before trial and told her not to testify against him.

Eva Brown testified that she owned and lived in a two-flat at 7342 South Harvard Street, Chicago, where she ran a senior citizens' sheltered care home. She admitted receiving circuit breaker warrants, exhibits 4B1 through 4B11, which had been addressed to her sheltered care home. When she received them, she called defendant, who endorsed them. Brown then gave the checks to Isabel, who deposited them in one of their joint accounts at the La Grange State Bank. She wrote exhibit 17, a check for $1,200, payable to Ernest Parker, at defendant's request and in his presence. She cashed warrants marked exhibits 4B15, 4B16, 4B17 and 4B18 at a local currency exchange because she received them on a Saturday, when banks were closed, and gave defendant half the money she received. She had been indicted for her part in these activities and been charged with theft and conspiracy to commit theft. She was to plead guilty and, in exchange for her testimony, the State's Attorney's office was to recommend that she receive probation rather than a jail sentence.

Before continuing, the circuit court again informed the jury that the evidence they were then about to hear was being admitted for the limited evidentiary purpose, which it detailed. Brown then explained that defendant suggested she fill out circuit breaker applications for six or seven senior citizens under her care. Two or three weeks later, after "her people" had received their warrants, defendant told her that he needed a mailing address for others. She permitted him to use her address in the hope that some of them would stay with her. Brown had seen warrants marked exhibits 5B1 through 5B32 before. Some she received through the mail and others defendant brought her. Defendant told her to open a bank account to facilitate their cashing, which she did. She always gave him half the money, sometimes in cash and other times by check. A few days before she was scheduled to testify, defendant told her not to testify against him; that

if she did not, his trial would soon be over; and suggested that she get a new lawyer and ask for a jury trial herself.

On cross-examination, Brown admitted that she had been told by the State's Attorney that she would be sentenced to from two to five years in the penitentiary for what she had done if she did not plead guilty and agree to testify against defendant.

Johnny Isabel, a fork-lift truck driver, testified he had known Brown for 15 to 20 years and she was his "lady." He and she opened a joint checking and a joint savings account at the La Grange State Bank where he already had two savings accounts of his own. He never put any of his money into either joint account and withdrew money from them only when Brown asked. He signed several deposit slips and presented many checks for deposit on her behalf, in particular exhibits 4B12, 4B13 and 4B14. After the circuit court again instructed the jury as to the limited evidentiary purpose of the evidence to follow, Isabel testified that he had deposited many other checks for Brown, which he then identified.

James Piper, an assistant State's Attorney, testified that on March 15, 1978, while he was supervisor of the Welfare Fraud Unit, defendant told him that he owned the Community Service and Information Bureau. Defendant consented to and signed a "permission to search" statement, exhibit 62, which authorized the search of his place of business and seizure of any letters, papers, or other property. Piper, accompanied by two policemen, seized and removed all defendant's files containing circuit breaker applications. Exhibits 44 through 55 were copies of claim forms found in defendant's files. They were paired with the originals that had been filed with the State and previously had been marked exhibits 2A1 through 2A14. Following the circuit court's cautionary instruction as to evidentiary limitations, five other copies of claims, exhibits 56 through 61, found in defendant's files, were received in evidence and matched with application exhibits relating to stricken counts. The State then rested.

Defendant's motion for a directed verdict was denied. The parties stipulated that if a certain handwriting expert were called, he would testify that Brown had signed a certain warrant relating to one of the stricken counts. The defense then rested.

The jury found defendant guilty of theft and conspiracy to commit theft. On May 19, 1981, defendant's motion for a new trial was denied. After hearing matters in aggravation and mitigation, the circuit court sentenced defendant to five years' imprisonment, from which he appeals.

## I

■ The principal point of error identified by defendant is that references to offenses for which prosecution was barred by the statute of limitations violated his due process rights; therefore, time-barred evidence should not have been submitted to the jury for any purpose. Defendant insists that the due process rights embodied in the statute of limitations override the long-standing evidentiary rule permitting evidence of collateral offenses to show knowledge, motive, intent, absence of mistake, or common plan. The first point to be observed in this connection is that the statute of limitations is not a rule of evidence, but a defense to prosecution. (*United States v. Ashdown* (5th Cir. 1975), 509 F.2d 793, 798, *cert. denied* (1975), 423 U.S. 829, 46 L. Ed. 2d 47, 98 S. Ct. 48.) Defendant's reliance upon *Toussie v. United States* (1970), 397 U.S. 112, 25 L. Ed. 2d 156, 90 S. Ct. 858, and *People v. Ross* (1927), 325 Ill. 417, 156 N.E. 303, is also misperceived. As defendant concedes in his reply brief, neither *Toussie* nor *Ross* stand as authority for his proposition, nor is either case directly concerned with the issue articulated by him. As the following analysis demonstrates, references to previous offenses were not made for the purpose of convicting defendant of such previous offenses contrary to due process, but solely to inform the jury that the violations with which defendant was charged might bear a sufficient nexus with past conduct to permit the inference that coincidence, inadvertence, or accident was implausible or unlikely.

Complex and involved financial crimes are particularly susceptible to proof that a defendant has committed similar offenses, and such proof is admissible to show intent or guilty knowledge of the pending charges. (*People v. Epping* (1959), 17 Ill. 2d 557, 162 N.E.2d 366; *People v. Smith* (1960), 18 Ill. 2d 547, 552, 165 N.E.2d 333.) Although proof of other crimes is oftentimes held admissible because those crimes have been committed concurrently with the crime charged (*People v. Epping; People v. Ernst* (1923), 306 Ill. 452, 458, 138 N.E. 116; *People v. Clark* (1968), 104 Ill. App. 2d 12, 24-25, 244 N.E.2d 842), they are admissible as well when circumstances give rise to the inference that defendant must have intended to commit the crime or had knowledge that a crime was being perpetrated (*People v. Ernst* (1923), 306 Ill. 452, 458), among other reasons. Proof of similar circumstances may extend to evidence involving prior financial crimes which took place beyond the statute of limitations, as in the instant case. (*People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54, *cert. denied* (1957), 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 559; *People v. Miller* (1917), 278 Ill. 490, 116 N.E. 131; *People v. Toellen* (1978), 66 Ill.

App. 3d 967, 384 N.E.2d 480.) The rule is the same in other jurisdictions. *United States v. Garvin* (8th Cir. 1977), 565 F.2d 519; *United States v. Hutul* (7th Cir. 1969), 416 F.2d 607, 624, *cert. denied* (1970), 396 U.S. 1012, 24 L. Ed. 2d 504, 90 S. Ct. 573; *McCluskey v. State* (Okla. Crim. App. 1962), 372 P.2d 623, 631; *Wilson v. State* (1931), 184 Ark. 119, 41 S.W.2d 764.

In *People v. Clark,* decided by the supreme court, two indictments had been returned against defendant on May 3, 1954, charging him with larceny by embezzlement and another undisclosed charge. The alleged larceny took place on January 3, 1953, when defendant wrongfully converted the proceeds of a cashier's check for his own use. At trial on September 13, 1954, the State introduced evidence tending to show other similar offenses, including one which occurred more than three years before the subject indictment and thus beyond the applicable statute of limitations. In upholding his conviction, the supreme court held (9 Ill. 2d 46, 56):

"Where a specific intent is an essential element of a crime and the prosecution must prove this specific intent in order to secure a legal conviction, evidence of similar acts committed by the accused, happening at or about the same time, is relevant and competent to show such intent. (*People v. Popescue,* 345 Ill. 142; *People v. Folignos,* 322 Ill. 304.) That such evidence proves or tends to prove an offense other than the one with which the accused is charged is never a valid objection to its admissibility. (*People v. Spaulding,* 309 Ill. 292.) Intent is a specific element of the crime of embezzlement. Consequently, proof of similar offenses is competent to show the intention of the defendant in the particular act of embezzlement charged in the indictment. (*People v. O'Malley,* 404 Ill. 165; *People v. O'Connell,* 386 Ill. 606; *People v. Duzan,* 272 Ill. 478.) Defendant argues that the similar acts proved here were too remote from a standpoint of time to be admissible or competent. All of said acts, however, occurred within a two-year period of time prior to the act of embezzlement for which defendant was tried."

Here, defendant's specific intent was an essential element of both the crime of theft (Ill. Rev. Stat. 1979, ch. 38, pars. 16—1(a)(1), (b)(1)), and the crime of conspiracy (Ill. Rev. Stat. 1979, ch. 38, par. 8—2). Further, the evidence established that: all the offenses took place between September 29, 1976, and June 30, 1977, a period of nine months; each offense involved the same victim, the State of Illinois; and each followed the scheme whereby defendant presented circuit breaker warrants bearing fictitious or unauthorized payees'

names to Brown, who, through bank and currency exchange procedures, obtained the funds which she then split with defendant. Those transactions by which defendant was alleged to have obtained funds from and after May 29, 1977, through June 30, 1977, were the subject matter of the 18 charged offenses. Those transactions which were alleged to have occurred between September 29, 1976, through May 29, 1977, were excluded from the charges, but constituted the collateral offenses to which reference was made in aid of proving the charged offenses. From these facts and circumstances, it is abundantly clear that evidence of other offenses which took place within nine months of the crimes with which defendant was charged were germane, competent and admissible and were not too remote in proving his culpability. Defendant's due process rights were not violated by the utilization of other crimes evidence under the foregoing facts. See also *Lisenba v. California* (1941), 314 U.S. 219, 227-28, 86 L. Ed. 166, 177, 62 S. Ct. 280, 285-86, and *United States v. Hutul* (7th Cir. 1969), 416 F.2d 607, 624.

■ Defendant next contends that if such evidence were to be held admissible, its prejudicial impact far outweighed its probative value and that it was unnecessary for the purpose of establishing the elements of the offenses for which he was charged, relying upon *People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448. In *Butler*, the evidence of other crimes raised substantial collateral issues which could have confused the jury, a situation absent in the instant case. The determination of whether the prejudicial effect of the subject evidence outweighed its probative value was within the discretion of the circuit court. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) In addition, with each admission of collateral crimes evidence, the circuit court admonished the jury with respect to the limited use for which that evidence was being introduced, and instructed the jury to that effect at the conclusion of the trial. The evidence of which defendant complains was thereby properly and effectively limited by the circuit court for its intended purposes. No abuse of discretion therefor can be discerned.

■ The instruction to the jury with respect to the limited use for which the other crimes evidence was admitted is the basis for defendant's next assertion of error, citing *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773, *People v. Richards* (1978), 64 Ill. App. 3d 472, 381 N.E.2d 307, and *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442, *rev'd on other grounds* (1975), 62 Ill. 2d 114. In each of the foregoing cases, the instruction was challenged as having been "open-ended" because the inclusion of purposes for which the

evidence was received were not supported by the evidence and were therefore overbroad. In the case *sub judice*, the evidence of other offenses did indeed tend to establish defendant's knowledge, motive, intent, common design and absence of mistake, which were also the words used in the circuit court's repeated oral admonitions to the jury prior to the introduction of the evidence during the course of the trial. The admonitions were, therefore, proper and no error can be fairly attributed to their use. Assuming, *arguendo*, that the instruction was overbroad, no prejudice was evident since proof of defendant's guilt was overwhelmingly established and retention of the excess verbiage cannot be said to have influenced the jury's verdict. *People v. Weathers* (1974), 23 Ill. App. 3d 907, 913.

■ Because the time-barred offenses were characterized by the circuit court as "crimes," defendant urges the reversal of his conviction, relying upon *People v. Richards.* At the time this case was tried, the Illinois Pattern Jury Instructions used the words "evidence of other crimes" (Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.14 (1968)), and the instruction therefore was properly given. Although the term "other offenses" is now deemed to be preferred (IPI Criminal No. 3.14 (2d ed. 1981)), error which occurred, if any, with respect to the instruction was harmless in light of the overwhelming evidence of defendant's guilt and the unlikelihood that the objectionable word could have influenced the outcome of the case. See *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 955, 438 N.E.2d 516, *appeal denied* (1982), 91 Ill. 2d 576.

## II

■ Finally, error is urged by defendant in that the jury was not instructed that it could consider evidence of Brown's guilty plea only in connection with assessing her credibility and not as substantive evidence of defendant's guilt. Defendant did not object to Brown's guilty plea, nor was this issue raised in his written motion for a new trial. Therefore, the issue is waived for appellate review. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233; *People v. Cartalino* (1982), 111 Ill. App. 3d 578, 588, 444 N.E.2d 662.) Further, defendant did not request that the jury be admonished with regard to the purposes for which the guilty plea was admitted and did not tender a jury instruction on this issue, which also constitutes waiver of any objection on review to the absence of such an instruction. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Defendant claims, however, that failure to give a limiting instruction on this issue constitutes plain error requiring reversal, citing authorities. The issue therefore must be

examined from the standpoint of determining whether or not to apply the plain error rule to these facts. *People v. Roberts; People v. Lieberman.*

The State had the right to disclose on direct examination that Brown, a codefendant, had pleaded guilty in anticipation of defendant's attack on her credibility as a witness; it was not required to wait for such evidence to be established by defendant on cross-examination. (*People v. DeHoyos* (1976), 64 Ill. 2d 128, 131, 355 N.E.2d 19; *People v. Poliquin* (1981), 97 Ill. App. 3d 122, 134, 421 N.E.2d 1362, *appeal denied* (1981), 85 Ill. 2d 572.) Moreover, IPI Criminal No. 3.17 was submitted to the jury, which provided:

> "An accomplice witness is one who testifies that she was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

Because the jury was alerted to the posture in which Brown's testimony was to be evaluated, any possible prejudice that could have arisen from her admission of guilt was minimized, if not entirely eliminated. The extensive evidence offered by the State in support of its charges against defendant constituted overwhelming evidence of his guilt and error, if any, in permitting Brown's plea of guilt to be considered by the jury was harmless. No plain error emerged from the circuit court's failure to instruct the jury further on this issue.

Defendant relies upon *United States v. Halbert* (9th Cir. 1981), 640 F.2d 1000, in support of his contention. In *Halbert*, two accomplices were the only witnesses to testify against defendant. They had pleaded guilty to their involvement in the mail fraud scheme for which defendant was being tried. Repeated reference to the guilty pleas was made during closing argument of both defense counsel and the prosecutor. Copies of the plea agreement were introduced in evidence. The district court's failure to clearly instruct the jury as to the limited purpose for which their guilty pleas could be considered under these conditions required reversal and remandment for a new trial. Evidence of defendant's guilt here was by no means limited to accomplice testimony as in *Halbert*, but was established through documentary evidence and testimony of 20 witnesses in addition to that given by Brown. To be noted here also was the State's abstention from use of Brown's guilty plea during the course of the trial and the absence of any reference to the plea in closing argument, unlike *Halbert*. Therefore, the prejudicial effect of Brown's guilty plea in the instant case was minimal, if at all present, in contrast to *Halbert*.

For the foregoing reasons, there is no basis in the record upon which to disturb the jury's verdict and defendant's convictions. Accordingly, we affirm.

Affirmed.

DOWNING, P.J., and PERLIN, J., concur.