(No. 27673.—■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAWRENCE J. O'CONNELL, Plaintiff in Error.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

SIMON HERR, and HAROLD TUCKER, both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

Plaintiff in error, Lawrence J. O'Connell, was convicted in the criminal court of Cook county on a charge of embezzlement and sentenced to the penitentiary for a term of from one to fifteen years. The indictment consists of four counts. Each count contains an allegation as to the constituency of the Industrial Commission, its membership, and the appointment, qualification and service of plaintiff in error as clerk, agent and employee of said commission, in the capacity of chief security examiner. The first count charges that plaintiff in error, on September 29, 1941, feloniously embezzled and converted to his own use six bonds, each of the value of one thousand dollars, of the Chicago Sanitary Rag Company, a corporation, which were then and there in the possession of the State of Illinois and had been delivered to and were under the care and control and in the custody of plaintiff in error in his capacity as clerk, agent, servant, employee and chief security examiner as aforesaid. The second count differed from the first only in that it alleged that said bonds were in the possession of said members of the Industrial Commission by virtue of their said office and had been delivered to and were in the care, control and custody of plaintiff in error in the same capacity as alleged in the first count. The third count was the same except that the bonds were alleged to have been in the possession of the State of Illinois, and the fourth count followed the others and, like the second count, alleged possession of the bonds in the members of the Industrial Commission by virtue of their office.

The prosecution proved that Julian S. Goldberg, an employee of Chicago Sanitary Rag Company, whose father was president of the company, in an effort to qualify the company as a self-insurer under the provisions of the Workmen's Compensation Act, delivered to plaintiff in

error the six bonds in question. Thereafter the company received a certificate, or notice of approval, by the Industrial Commission, certifying that the Chicago Sanitary Rag Company is a self-insurer under the provisions of section 26 of the Workmen's Compensation Act and has complied with all the terms and provisions that are set up in the Workmen's Compensation Act of Illinois. This certificate was entitled, "Notice of approval of compensation security, By Industrial Commission." It was dated July 19, 1940, and stated, "Approved as of July 1, 1940." It was signed, "Industrial Commission of Illinois, By L. J. O'Connell, Chief Security Examiner." It was on a regular printed form of the Industrial Commission, designated "Form 37." At the same time the company received a notice of approval of compensation security for occupational diseases, by the Industrial Commission, on form O.D. No. 130, dated and signed in the same manner as the notice on form 37. Accompanying the two notices of approval was a letter on the printed letterhead of the Industrial Commission, dated July 19, 1940, signed by L. J. O'Connell, Chief Security Examiner, Illinois Industrial Commission. The letter was addressed to Chicago Sanitary Rag Company, and in the first two paragraphs stated: "Enclosed herewith please find our regular approval certificates under both the Workmen's Compensation Act and the Occupational Diseases Act. This letter will also acknowledge receipt of $5000 Sanitary District bond, as guarantee for Workmen's Compensation Act, and one $1000 Sanitary District bond, as guarantee for the Occupational Diseases Act."

It was proved and admitted that the signature to the two certificates and the letter was that of plaintiff in error and that during the period covered by the transactions involved he was acting in the capacity of chief security examiner for the commission. Proof was also made, and plaintiff in error admitted, that he pledged $5000 of bonds

with Prairie State Bank, of Oak Park, to secure a personal loan made to plaintiff in error for $4000, which he was unable to pay, and to satisfy which the bonds were sold. Plaintiff in error, at the time of the trial, still had the $1000 bond in his possession.

Section 80 of the Criminal Code, under which he was indicted, reads: "If any state, county, township, city, town village, or other officer elected or appointed under the constitution or laws of this state, or any clerk, agent, servant or employee of any such officer, embezzles or fraudulently converts to his own use, or fraudulently takes or secretes with intent so to do, any money, bonds, mortgages, coupons, bank bills, notes, warrants, orders, funds or securities, books of record, or of accounts, or other property belonging to, or in the possession of the state or such county, township, city, town or village, or in possession of such officer by virtue of his office, he snall be imprisoned in the penitentiary not less than one nor more than fifteen years." Ill. Rev. Stat. 1941, chap. 38, par. 214.

It is contended, on plaintiff in error's behalf, that in order to sustain a conviction under the indictment it was necessary for the prosecution to establish that the Industrial Commission had lawful authority to hold the securities of self-insurers; and that, pursuant to such authority, plaintiff in error, by virtue of his agency, came into possession of the securities for and on behalf of the Industrial Commission or of the People of the State of Illinois. In support of the contention that the prosecution failed to establish such facts, the argument is advanced that there was no legal authority or duty in law, on the part of members of the Industrial Commission, to hold such securities and that the bonds did not come into plaintiff in error's possession by virtue of his office as chief security examiner, and therefore he is not guilty of embezzling public funds.

The prosecution argues that the Industrial Commission had authority to receive security from a self-insurer for

the protection of workmen under the Workmen's Compensation Act, and that the proof shows that plaintiff in error received said bonds in his capacity as clerk or agent of the commission and converted them to his own use. Minor contentions are included in the briefs, which are incidental to the main contention that the commission had no authority in law to hold said bonds, hence plaintiff in error was in possession in his individual rather than in his official capacity.

Numerous authorities are cited in support of the legal proposition, universally acknowledged, that a public officer can only be convicted of embezzling public funds when such funds come into his hands by virtue of some duty or authority conferred by statute. Citations are needless to support that general proposition. To point out the particulars in which the many cited cases are inapplicable in this case would extend this opinion beyond any necessary scope. The decisive point is, was the Industrial Commission authorized by the Workmen's Compensation Act to receive and hold in trust securities deposited by self-insurers to guarantee the payment of workmen's compensation and occupational disease claims?

The Industrial Commission is authorized by law to employ such assistants and clerical help as may be necessary, (Ill. Rev. Stat. 1943, chap. 48, par. 151,) and to make and publish rules and orders for carrying out the duties imposed upon it by law. (Ill. Rev. Stat. 1943, chap. 48, par. 153.) Any employer may become a self-insurer under section 26 of the Workmen's Compensation Act, (Ill. Rev. Stat. 1943, chap. 48, par. 163,) by filing with the commission a sworn statement showing his financial ability to pay the compensation provided for in the act, and if the sworn statement so filed does not satisfy the commission of the financial ability of such employer the commission shall require such employer to furnish security, indemnity or a guaranty bond. By rule 38 the commission

provided that every employer who applies for permission to carry his own compensation risk must file a financial statement and answer questions on the commission's regular form. By rule 39 the financial statement shall show to the satisfaction of the commission the employer's ability to discharge accruing liability under the Workmen's Compensation Act. Rule 39 then provides that no application to become a self-insurer will be entertained unless the applicant shall have deposited, in the name of an approved trustee and in an approved depositary, a fund sufficient to discharge all liability that may have accrued by reason of awards for the payment of compensation that have become final on the date of such application. According to the undisputed testimony in the record, the duties of the chief security examiner, on September 29, 1941, and thereafter, were to investigate and approve so-called self-insurers, and he was in full charge of the self-insurance of the insurance department. There appears to have been no regularly adopted rule or order of the commission defining the duties of the chief security examiner.

Plaintiff in error testified that he organized the self-insurance department. According to his testimony it was his duty to examine all applications of employers for permission to carry their own risks. He ordered them to set up funds in their own bank to guarantee payment of compensation, and also saw that they had a secondary fund ample to carry current claims. The commission at a special meeting on February 21, 1934, approved and adopted a form of employer's application for permission to carry his own risk without insurance. That application contained the following: "In consideration of the approval of this application, the applicant hereby expressly agrees as follows: * * * 2. That the applicant upon request will deposit with the Industrial Commission securities to be held by the Commission in trust with power, in the event of default of the said applicant to pay compensation due

its employees or in the event of insolvency of the said applicant, to sell the securities or so much of them as may be required to liquidate the liability of the said applicant to pay compensation to its injured employees, or their beneficiaries in case of death." Other provisions were for the establishment of a special fund for the payment of compensation in the event of default or insolvency of the applicant. This was obviously the fund that was to be escrowed, because the commission officially of record authorized the chief security examiner to examine the contents of the boxes or visit the depositaries where the funds are held in escrow, and there examine same, and report back to the commission quarterly.

It is argued that the form above referred to can have no effect in this case because the proof shows that it was not used by the commission. That fact would make no difference because the commission could not, by rule 39, limit its authority conferred by statute, which was as inclusive as the form approved and adopted at the special meeting in February, 1934.

It is strongly urged that as rule 39 provides that no application for self-insurance will be entertained unless the applicant shall have deposited, in the name of an approved trustee and in an approved depositary, a fund sufficient to discharge all liability for compensation, any other method of accepting possession of the securities involved in this case is excluded. The rule that the expression of one mode of action excludes all other methods is applied solely to a statutory enactment. A mode of action provided by rule does not exclude another method provided by statute. (*Pinkerton's Nat. Detective Agency* v. *Fidelity & Deposit Co.* 138 Fed. 2d 469.) The construction of rule 39 sought by plaintiff in error would affect its validity. The commission could not minimize its statutory authority by a rule which would nullify that provision of the statute

which provides, in regard to self-insurers, that if the commission is not satisfied of the employer's financial ability, it shall require such employer to furnish security, indemnity or a bond guaranteeing payment of compensation by the employer, or make some other provision satisfactory to the Industrial Commission for securing the payment of compensation. (Ill. Rev. Stat. 1941, chap. 48, sec. 26, par. 163(2)(4).) The plain provisions of rule 39 show that it applies to a fund "sufficient to discharge all liability that may have accrued by reason of awards for the payment of compensation that have become final on the date of such application." Clearly that rule has no application to the securities furnished to guarantee payment of compensation liabilities arising subsequent to the date of the application. That conclusion was reached by the Circuit Court of Appeals for the Seventh Circuit in *Pinkerton's Nat. Detective Agency* v. *Fidelity & Deposit Co.* 138 Fed. 2d 469, a civil suit on the official bond of plaintiff in error, wherein the same issue was presented in connection with his conversion to his own use of a bond left with plaintiff in error and the commission as a guarantee for the payment of awards against the detective agency as a self-insurer. The reasoning of the court in that case is completely persuasive here.

In that case the court said: "Having held that the commission had the authority (to receive and hold the bonds in trust) we think there is little room to doubt but that O'Connell was acting in his official capacity. The record discloses in numerous ways that he was held out to the public as agent and representative of the commission." The same is true in this case. He had charge of the commission's forms which were used. He signed the documents in the name of the commission by himself as chief security examiner. He acknowledged receipt of the bonds on the commission's official stationery, and, on the same

kind of stationery, requested that the annual renewal permission to act as self-insurer be obtained. To bolster his claim that the bonds in question were received by him in his individual rather than official capacity, plaintiff in error testified that the representative of the Chicago Sanitary Rag Company made arrangements with him to accept the bonds and do with them whatever he liked, "make a loan," and that in six or seven months he would bring in more bonds and then the whole thing would be taken care of the regular way; and that he told the company's representative that it was merely a loan and told him what he was going to use the money for. In this he was contradicted by the company's representative. Plaintiff in error's testimony that, "I seized the opportunity to get some money that would give me some means of providing for the needs of my family," coupled with his contention that he was guilty only of wrongfully permitting a company to act as a self-insurer in return for a personal pecuniary gain was not calculated to enhance his credibility in the minds of the jurors. They had before them the documents which positively contradicted plaintiff in error's testimony. In his argument it is asserted that it is not shown that plaintiff in error occupied an office created by statute. He was a clerk or agent of statutory officers. It was not necessary that plaintiff in error be shown to have been himself occupying an office created by statute. (*People* v. *Donahue,* 369 Ill. 558.) It was proper to admit evidence of other transactions with bonds similarly deposited with the commission as such evidence was competent on the question of criminal intent. (*People* v. *Duzan,* 272 Ill. 478.) The evidence is conclusive of his guilt and the judgment and sentence of the criminal court is therefore affirmed.

*Judgment affirmed.*