(No. 33831.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LORAN S. CLARK, Plaintiff in Error.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

Loran S. Clark, *pro se.*

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, WILLIAM L. CARLIN, and ABBEY BLATTBERG, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Loran S. Clark, prosecutes this writ of error to review a judgment of the criminal court of Cook County entered on a jury verdict finding him guilty of larceny by embezzlement. He was sentenced to imprisonment in the penitentiary for a term of not less than one year nor more than two years.

Recourse to the record discloses that on May 3, 1954, two indictments had been returned to the criminal court against defendant. By one of them, No. 54-1075, he was charged with larceny by embezzlement of the sum of $235 from Mabel Josephson. The nature of the other charge does not appear. On the day named, defendant, who was an attorney, (see *In re Clark*, 8 Ill.2d 314,) filed his appearance *pro se* and, upon arraignment, entered a plea of not guilty. At the same time the cause was set for trial on June 14, 1954. When that day arrived the People were ready for trial but defendant moved for a continuance, stating he was going to be represented by an attorney named McClory who would be able to go to trial in one week. The court granted the motion for continuance and, after open discussion with the assistant State's Attorney in defendant's presence, expressly advised the defendant as follows: "You are on trial a week from today in indictment No. 54-1075. * * * The other one will be continued until the same date." A week later, on June 21, 1954, attorney Paul F. Hayzlett filed his appearance as defendant's counsel, a motion for change of venue was filed and allowed, and the cause transferred to the chief justice of the criminal court for reassignment. Thereafter

it was continued by agreement to July 7, 1954, and on that date was assigned for trial on September 13, 1954. On the latter date Hayzlett and defendant appeared and sought a further continuance of three days which was denied when it appeared the People and their witnesses were ready for trial. Hayzlett then informed the court he was prepared to proceed with the other charge against defendant but that he was unprepared in cause No. 54-1075, which is the one involved in this review. The trial court, taking notice that defendant had been expressly advised of the People's election to first proceed in cause No. 54-1075, ruled that ample opportunity had been given to prepare a defense and ordered that the trial would begin after a recess of several hours. As one of his numerous assignments of error, defendant now contends that the court's refusal to grant his counsel a continuance in the cause was an invasion of his constitutional right to a fair trial.

The granting of a continuance to permit preparation for a case necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. Its decision will not be disturbed upon review unless it is clearly shown that such discretion has been abused. (*People v. Quevreaux,* 407 Ill. 176; *People v. Ritcheson,* 396 Ill. 146.) The record in the instant case shows that the claim of unpreparedness, upon which the request for further continuance was based, was made five months after the indictment had been returned against defendant; three months after the cause had been continued, with the People ready for trial, in order to permit defendant to arrange for counsel; three months after defendant had been expressly notified he would be first tried in cause No. 54-1075; three months after Hayzlett had filed his appearance in the cause, and three months after additional delay had been won through a motion for a change of venue. Little merit, therefore, can be found in the present claim that time to

prepare a defense was arbitrarily denied to defendant. Additionally, there is no showing that defendant's counsel was overmatched in the trial or that the defense was prejudiced or embarrassed by proceeding to trial when it did. Under all the circumstances, which create some doubts as to the sincerity of the defendant's motives, we are unable to say the trial court abused its discretion in refusing to permit defendant to delay further. Cf. *People* v. *Martin,* 376 Ill. 569.

By another assignment of error defendant urges that he was poorly defended and that the trial court erred in not intervening in his behalf, while permitting the prosecution to take advantage of his counsel's incompetence. A similar contention was made and rejected in *People* v. *Stephens,* 6 Ill.2d 257. We held there that although the trial court has the duty of assuring a defendant a fair trial, it has no duty to intervene where a defendant is represented by counsel of his own choice, merely because the court feels counsel is not experienced or skillful. This principle, we believe, is singularly applicable where, as here, the defendant exercising his choice of counsel was himself a practicing attorney. Further, as is also set forth in the *Stephens case,* a conviction will not be reversed for poor representation unless it can be said from the record that the representation was of such low caliber as to amount to no representation at all, or that it was such as to reduce the trial to a farce. We find nothing in the record of defendant's conviction which approximates either condition. Neither do we find any indication that defendant was dissatisfied with his counsel's conduct of the defense until after the final result had been reached. There is, therefore, no merit to the contention that the court's failure to intervene denied defendant a fair trial.

The next contention of defendant is that the closing remarks of the assistant State's Attorney were so prejudicial and inflammatory as to warrant a reversal of his

conviction. Although defendant's brief and argument contains what purports to be an excerpt of the prosecutor's summation to the jury, the abstract, by which this court must be guided in its consideration of the errors assigned, does not include either the argument complained of or a showing that any objection was made and a ruling of the court obtained thereon. While we remark in passing that the language of the excerpt does not appear to exceed the bounds of legitimate argument, it is sufficient answer to this claim of defendant to point out that the failure of the party raising such issue to include the argument in the abstract of record, together with a showing of objections and rulings thereon, precludes this court from considering the issue on review. *People* v. *Ritcheson,* 396 Ill. 146; *People* v. *McDonald,* 365 Ill. 233; *People* v. *Smith,* 404 Ill. 125.

Defendant also assigns as error that he was prejudiced by the prosecutor's excessive use of leading questions while conducting the direct examination of the People's witnesses. To support this contention defendant has culled questions at random from various parts of the report of proceeding without regard to the continuity or purpose of the examination. As presented, therefore, we have no means of determining, other than by a search of the record, whether the questions complained of were proper or improper. In addition, it appears both that no objection was made to the admissibility of such evidence and that the alleged error was not raised upon the written motion for a new trial. It is fundamental that evidence introduced in the trial court, to which no objection is made, cannot be complained of for the first time on review, (*People* v. *Laster,* 413 Ill. 224,) and that alleged errors not raised upon the written motion for a new trial are waived. *People* v. *Cione,* 293 Ill. 321; *People* v. *Vickers,* 326 Ill. 290.

The remaining assignments of error require some consideration of the facts and circumstances from which this

charge against defendant arose. The record discloses that defendant, an attorney, had represented the complaining witness, Mabel Josephson, in several matters extending over a period of three years. Early in June, 1952, when she was seven months behind with payments due the Western Federal Savings & Loan Association, she engaged defendant to negotiate a refinancing of the mortgage. Though the purpose is not shown it appears that defendant, on June 17, 1952, caused a land trust on the property to be created, and advanced the trustee's fee of $40 from his own funds. When negotiations with Western Federal reached a stalemate, defendant, on September 12, 1952, made arrangements with Avondale Savings & Loan Association to accept Mrs. Josephson's application for a new mortgage in the amount of $10,000, with smaller monthly payments. Avondale, it appears, customarily charged a "commission" for making loans computed at the rate of 2 per cent of the amount of the mortgage; thus the commission in the present case was $200.

On September 13, defendant took Mrs. Josephson to Avondale where she executed some documents pertaining to the new loan. There, pursuant to his instructions, she purchased a cashier's check for $235 in her name. Defendant then took her to the Cosmopolitan National Bank where arrangements were made for the creation of a new land trust which would be acceptable to Avondale. There, according to the version of the complaining witness, defendant held a private conversation with a bank employee for some minutes, then returned and asked her to endorse the check over to him and to give him an extra $5. After she had complied, defendant again conversed with the bank employee, then returned to the complainant telling her that everything had been taken care of, that her worries were over, and that she would start making payments on the new mortgage October 1. Defendant, for his part, related that he had been given the check and the $5 in payment

of his fees and the $40 he had advanced, and that it was just coincidental that payment had been made at the bank, and that the check totalled the amounts due Avondale and Cosmopolitan for commission and trustee's fee. In any event, defendant deposited the check in his own bank account and applied the proceeds to his personal use. On September 15, two days after the parties had visited the Cosmopolitan National Bank, a new land trust was created for which the bank's initial charges were $35.

Soon after September 13, a letter of opinion ordered by Avondale from the Chicago Title & Trust Company, showed an unreleased mechanic's lien judgment and the existing first mortgage. Although Avondale mailed a copy of the opinion to defendant, he did nothing, and efforts by all concerned to locate him proved futile. About two months later Western Federal filed suit to foreclose their mortgage. When that occurred the complaining witness sought the help of Robert Diehl, a real estate broker, to enable her to save the property. Diehl finally reached defendant by telephone and inquired about the $240. Thereafter defendant appeared at the Josephson home and delivered a statement of the mortgage transaction in which he showed the sum of $240 as an item "on deposit." On January 23, 1953, Diehl arranged for defendant to be present for the settlement of the mechanic's lien on the Josephson property and when defendant was asked for the money Mrs. Josephson had given him to close the deal, he stated it was in a safe-deposit box and refused to go after it. The same day defendant accompanied Diehl to a meeting of the principal parties, at which an escrow agreement was signed, a stipulation entered into to dismiss the foreclosure suit, the old liens discharged, and a new mortgage executed. At that time defendant, who then had only $1.52 in his bank account, failed to produce the $240, and at no time thereafter did he return it or account for it. The indictment charges that on January 23, 1953, defendant

fraudulently embezzled and converted to his own use the sum of $235.

Based upon the foregoing facts as testified to by witnesses for the prosecution, it is the theory of the People that defendant wrongfully converted the proceeds of the $235 cashier's check to his own use, after he had received the check for the specific purpose of applying the proceeds to the expenses of refinancing the mortgage, namely, for the payment of Avondale's $200 commission, and Cosmopolitan's $35 trust fee. Defendant, on the other hand, insists that both the $235 check and the $5 cash he received from Mabel Josephson were to compensate him in the amount of $200 for his services in negotiating the new loan, and to reimburse him in the amount of $40 for the money he had advanced at the time the original land trust was created. Consistent with his theory, defendant makes a contention that the evidence does not sustain the verdict and that there was and is a reasonable doubt of his guilt, urging largely that Mabel Josephson's testimony relating to the purpose for which the $235 check was given him "was formulated to suit the convenience of the prosecution," and that it was a sheer coincidence that he was paid $240 in fees at a time when $235 in fees were owed to Avondale and Cosmopolitan.

In a criminal proceeding, the resolution of conflicting evidence and the determination of the credibility of witnesses is a matter exclusively within the province of the jury, whose finding will be given great weight. (*People* v. *Moretti,* 6 Ill.2d 494; *People* v. *McClain,* 410 Ill. 280.) A court of review will substitute its judgment for that of the jury only when it can be said from a careful consideration of all the evidence that there is clearly a reasonable and well-founded doubt of the guilt of the accused. (*People* v. *Smith,* 404 Ill. 125; *People* v. *Leach,* 398 Ill. 515.) Here the evidence as to the purpose for which the $235 was received is in direct conflict. It was for the jury to

determine who was telling the truth and to decide whether it was mere coincidence that defendant's alleged fees were paid at the time and place they were. The jury could properly consider too that the People's version of the evidence received some support from the defendant's own written statement, delivered to the complaining witness, in which he included an item of $240 as being "on deposit," and from his later statement to Diehl that he had the money advanced to him in a safe-deposit box. Considered in its entirety, we cannot say that the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt and are of the opinion the jury was justified in reaching the result it did.

The record shows that on an occasion early in the trial, while outside the presence of the jury, the court, over the objection of defendant's counsel, ruled that evidence of previous transactions between defendant and the complaining witness would be admissible in the cause. Thereafter, during direct and redirect examination of several of its witnesses, the People introduced evidence tending to show the following: (1) that in 1952 the complaining witness had given defendant $50 with which to satisfy a mechanic's lien, previously referred to herein, but that he had failed either to satisfy the said lien or to account for the money; (2) that in a still pending estate, wherein complaining witness was the administratrix and defendant her attorney, the latter had failed to account for approximately $420; (3) that in May, 1952, defendant had received $20 with which to accomplish the transfer of title to certain lots contained in the estate, which money was never applied for such purpose or accounted for; and (4) that in June, 1950, complaining witness had given defendant $350 with which to pay the taxes on said lots, but that he failed to do so or to account for the money. By his remaining assignments of error, defendant contends in various ways that the admission of testimony and exhibits pertaining to the pre-

vious transactions between himself and Mabel Josephson was erroneous in that such evidence was not relative to the offense charged in the indictment.

Where a specific intent is an essential element of a crime and the prosecution must prove this specific intent in order to secure a legal conviction, evidence of similar acts committed by the accused, happening at or about the same time, is relevant and competent to show such intent. (*People* v. *Popescue,* 345 Ill. 142; *People* v. *Folignos,* 322 Ill. 304.) That such evidence proves or tends to prove an offense other than the one with which the accused is charged is never a valid objection to its admissibility. (*People* v. *Spaulding,* 309 Ill. 292.) Intent is a specific element of the crime of embezzlement. Consequently, proof of similar offenses is competent to show the intention of the defendant in the particular act of embezzlement charged in the indictment. (*People* v. *O'Malley,* 404 Ill. 165; *People* v. *O'Connell,* 386 Ill. 606; *People* v. *Duzan,* 272 Ill. 478.) Defendant argues that the similar acts proved here were too remote from a standpoint of time to be admissible or competent. All of said acts, however, occurred within a two-year period of time prior to the act of embezzlement for which defendant was tried. When it is further considered that all of said acts occurred during one continuous period of an attorney-client relationship that existed between the defendant and the complaining witness until just prior to his indictment in this cause, we are of the opinion that such acts were not so remote to the proceeding as to be inadmissible. Cf. *People* v. *Duzan,* 272 Ill. 478.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*